IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JACKE CARTER,

                      Plaintiff,                        OPINION AND ORDER

    v.

                                                  19-cv-057-wmc

SANDRA MCARDLE and JOLINDA
WATERMAN,

                      Defendants.

        In a prior opinion and order, the court granted *pro se* plaintiff Jackie Carter leave to proceed against defendants Sandra McArdle and Jolinda Waterman on Eighth Amendment medical care claims as an inmate in the custody of the Wisconsin Department of Corrections. In its screening order, the court also directed defendants to respond to plaintiff's motion for preliminary injunction and directed further responses after plaintiff submitted his proposed findings of fact. Having reviewed all of the parties' submissions, the court will deny plaintiff's motion for preliminary injunction, finding that in light of the changing circumstances surrounding his medical condition and security status, interference with the status quo by the court at this stage is not only unnecessary to prevent irreparable harm, but may well be counter-productive. Indeed, absent two, relatively minor requests that were not part of his original motion, plaintiff concedes that his medical concerns have now been addressed.

        Also before the court is defendant McArdle's partial motion for summary judgment for lack of exhaustion of one aspect of his broader Eight Amendment claim concerning defendants' treatment of his hernia mesh infection. (Dkt. #45.) In particular, this motion

turns on McArdle's theory that plaintiff was required to exhaust his specific allegation that Nurse Practitioner McArdle canceled his surgery to address this infection. Because the court finds there was no such requirement, the court will deny that motion as well.

Finally, Carter has filed numerous requests for assistance in recruiting *pro bono* counsel and related motions to stay this case pending recruitment of counsel. (Dkt. ##36, 59, 60, 68, 69.) The court will deny Carter's requests for counsel, albeit without prejudice, finding that he has repeatedly demonstrated the ability to respond to the one pending motion, Waterman's motion for summary judgment. After he files his *pro se* response, the court will reevaluate whether counsel is required should all or part of his case be allowed to proceed beyond that point. However, the court will grant him additional time to file his response, extending his deadline until March 10, 2020.

OPINION

**I. Plaintiff's Motion for Preliminary Injunction**

In its opinion and order granting plaintiff leave to proceed on his Eighth Amendment claim against defendants McArdle and Waterman, the court directed defendants to provide a status update on: (1) braces and orthotics; (2) pain medication (specifically Tramadol); and (3) medical treatment for his ongoing hernia mesh infection. (3/18/19 Op. & Order (dkt. #10) 4-5.) In response, defendant Waterman, who had access to his medical record, provided relevant portions of his medical record to support her representations that: (1) Carter was provided bilateral knee braces, bilateral ankle braces, orthotics and blue hi-top sneakers on March 14, 2019, despite his placement in restrictive

status housing; (2) Carter's prescription for Tramadol had been stopped because of concerns about Tramadol's impact on kidney function, although he was still prescribed Gabapentin and Lyrica at that time; and (3) after Carter initially refused to attend his pre-operation appointment for his hernia repair surgery, he had since agreed and his surgery had been rescheduled. (4/8/19 Def.'s Resp. (dkt. #16).)

In light of this response, the court indicated that it appeared defendants were adequately addressing Carter's current medical needs, but that plaintiff disputed he could still pursue his motion for preliminary injunction by filing proposed findings of facts with supporting evidence. (4/9/19 Order (dkt. #23).) Plaintiff took the court up on this offer and filed proposed findings (4/17/19 Pl.'s PFOFs (dkt. #24)), along with a supplement to his original motion (4/26/19 Suppl. (dkt. #28).)[1] In light of these submissions, the court directed defendants to respond to plaintiff's specific claims that: (1) he was seen by a nephrologist, who cleared him to resume taking Tramadol; and (2) his Lyrica prescription was discontinued. (6/10/19 Order (dkt. #35).) Defendant Waterman again responded timely, indicating that his Tramadol prescription was resumed on June 1, 2019, and that his Lyrica or Pregabalin prescription was restarted on June 15, 2019. (6/24/19 Resp. (dkt. #39).) Defendants also provided further context for restarting Carter's Tramadol prescription and for briefly halting his Lyrica prescription.

While plaintiff continues to claim that defendants' decision to remove him from Tramadol violated his Eighth Amendment rights, he does not challenge in his subsequent

---

[1] Plaintiff also submitted a letter to the court, dated April 22, 2019, complaining about defendant's refusal to allow him to see Dr. Gavin. To the extent this is motion, the court will deny it for the same reasons as it denies his motions for preliminary injunction.

3

submissions that he was prescribed the medication again after evaluation of his kidney condition. As importantly, in his most recent submission with regard to his renewed request for preliminary injunctive relief, Carter acknowledges that all of the concerns raised in his original motion have been addressed, while raising two new issues: (1) denial of a medical mattress; and (2) refusal to allow him to see Dr. Gavin instead of Nurse McArdle. As to the first issue, the allegations raised in his complaint do not concern the denial of a medical mattress. While plaintiff is free to pursue this claimed, wrongful denial in a separate lawsuit, the court will not expand this one -- or his motion for preliminary injunction -- to cover that request. With respect to his request to be seen by Dr. Gavin, as the court previously explained to plaintiff, he must act in good faith and cooperate fully with the health care professionals at HSU, including McArdle. Moreover, the medical records submitted in response to plaintiff's motion for preliminary injunction indicate that, if anything, it was *Dr. Gavin* who refused to prescribe Tramadol due to concerns about Carter's kidney function. As such, his complaints about McArdle appear misplaced, at least in part. Regardless, on this record, the court can find no basis in law or in fact to require WSPF to have Dr. Gavin direct Carter's care. Accordingly, to the extent Carter supplemented his preliminary injunction motion to add this request, it is denied.

Finally, Carter's request for preliminary injunctive relief with respect to ongoing treatment for his changing medical needs underscores the problem with entering such relief. Not only has he failed to demonstrate a likelihood of success on his claims of defendants' deliberate indifference to his medical needs, but his request for judicial intervention that would effectively, if preliminarily, dictate specific medical prescriptions

4

or procedures be undertaken by the defendants on less than a full record is only available upon a showing of the substantial likelihood of irreparable injury. Here, plaintiff wholly fails to meet that burden. If anything, the court is concerned that entry of preliminary relief could needlessly tie the hands of defendants and actually *increase* the risk of irreparable harm to the plaintiff.

## II. Defendant McArdle's Motion for Partial Summary Judgment on Exhaustion Grounds

In his complaint, plaintiff alleges that defendant McArdle altered orders for prescription pain medication, refused to treat his hernia mesh infection, and canceled surgery to address this ongoing medical issue. (Screening Order (dkt. #10) 2.) All of these allegations are part of his Eighth Amendment claim against Nurse McArdle. McArdle moves for dismissal on exhaustion grounds of only the portion of plaintiff's Eighth Amendment claim that addresses her allegedly wrongful stopping of his hernia mesh infection surgery. (Dkt. #45.)[2]

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, a prisoner must also "properly take each step within the administrative process" to comply with § 1997e(a). *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes following instructions for filing the initial grievance,

---

[2] Defendant also seeks leave to file an untimely reply brief, representing that there was a mistake in failing to file it timely. (Dkt. #52.) That motion is granted, and the court has reviewed the reply.

*Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), and filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), that are "in the place . . . at the time," and "administrative rules require." *Pozo*, 286 F.3d at 1025.

The purpose of this exhaustion requirement is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006); *see Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) ("once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement"). Because exhaustion is an affirmative defense, however, *defendants* bear the burden of establishing that plaintiff failed to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

In support of her motion, McArdle directs the court to plaintiff's inmate complaint WSPF-2018-26037, signed by Carter on December 19, 2018, which, among other concerns, complained that McArdle canceled his hernia mesh surgery. (Reid Decl., Ex. A (dkt. #48-1) 2.) On January 11, 2019, the inmate complaint examiner recommended dismissal of this complaint, and on January 18, 2019, the reviewing authority dismissed the complaint. (*Id.* at 2-4.) On January 31, 2019, Carter appealed this dismissal, and on February 1, 2019, the corrections complaint examiner dismissed his appeal. (*Id.* at 5-6.) Finally, on February 25, 2019, the Office of the Secretary of the DOC accepted the dismissal of the appeal.

From this record, therefore, defendant argues that plaintiff's specific grievance was plainly not exhausted *before* his filing the present lawsuit on January 22, 2019. Moreover, as the Seventh Circuit explained in *Perez v. Wis. Dep't of Corrections*, 182 F.3d 532 (7th Cir.

6

1999), the filing of a lawsuit "before administrative remedies could have been exhausted must be dismissed." *Id.* at 535. So far, McArdle's motion would appear to have merit.

In his response, however, Carter directs the court to some *48* inmate complaints touching on the allegations asserted in this lawsuit. (Pl.'s Opp'n (dkt. #51).) That list certainly includes WSPF-2018-26037, concerning McArdle's cancelation of his surgery, but also includes at least six other complaints from 2017 and 2018 in which Carter complained more generally about his infected hernia and lack of treatment for it. (*Id.* (describing grievances listed as numbers 15, 16, 26, 33, 43 and 45).) Taking the larger view, therefore, Carter's specific allegation concerning McArdle's delay of his surgery to address a hernia mesh infection is only a small part of his claim that defendants were deliberating indifferent to his medical need. Accordingly, whether viewed as part of a continuing violation or simply as one particular aspect of a larger, general claim, the court will not require plaintiff to exhaust this specific allegation in order to bring his broader Eighth Amendment claim. *See Turley*, 729 F.3d at 650 ("prisoners need not file multiple, successive grievances raising the same issue . . . if the objectionable condition is continuing"); *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) ("As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief.").[3] At minimum, plaintiff's numerous complaints concerning the HSU's

---

[3] In addition, to the extent this allegation should be viewed in isolation and separately exhausted, there appears to be no question that Carter properly exhausted that claim by February 25, 2019. There is some support in the Seventh Circuit that the court could simply grant him leave to amend his complaint to add this "new" claim. *See Cannon v. Washington*, 418 F.3d 714, 719–720 (7th Cir. 2005) (concluding that an inmate may amend his complaint to include claims that were not exhausted at the time that the original complaint was filed, but that are exhausted by the time that

failure to address his hernia mesh infection certainly placed prison administrators on notice and provided them a fair opportunity to resolve the grievance prior to his filing of the present lawsuit. *See Woodford*, 548 U.S. at 88-89; *Turley*, 729 F.3d at 650. Accordingly, the court will deny defendant McArdle's motion for partial summary judgment on exhaustion grounds.[4]

## III. Plaintiff's Motions for Assistance in Recruiting Counsel and to Stay Case

Finally, plaintiff has filed numerous motions for assistance in seeking pro bono counsel. (Dkt. ##36, 59, 60, 68, 69.) As Carter is aware, there is no right to counsel in a civil case. Instead, the court will take steps to recruit counsel only if "the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007).

Here, plaintiff argues that he suffers from mental illness and takes psychiatric medication. While the court does not doubt that plaintiff's mental health issues may make it more difficult for him to prosecute his cases, Carter has repeatedly demonstrated that he is more than capable of representing himself, as evidenced by his multiple filings in this case *and* his impressive submissions in other cases over a lengthy period of time. In this

---

an amended complaint is filed) (*per curiam*). As a matter of judicial economy, the court would readily grant such a motion were it necessary here.

[4] The court will also reset the dispositive motion deadline for defendant McArdle. While McArdle asked for a deadline 90 days after the court rules on the pending motion for partial summary judgment (dkt. #56), this request was not reasonable, especially given that it was only a *partial* motion. As such, the court will provide three weeks for defendant McArdle to move for summary judgment or request to join, at least in part, the other defendants' motion.

lawsuit, the only motion that requires Carter's attention is defendant Waterman's motion for summary judgment. Having reviewed that motion, the court believes Carter is certainly capable of responding to it. In addition, the court will, as it always does, view his submissions generously. At minimum, Carter has the first-hand knowledge necessary to respond to defendant Waterman's proposed findings of facts, which the court has attached to this order. The court will extend the deadline to March 10, 2020, for Carter's response. After reviewing his submission, the court will reconsider whether recruitment of counsel is warranted for further proceedings, if any.

ORDER

IT IS ORDERED that:

1) Plaintiff's motions for preliminary injunction and related motions (dkt. ##2, 24, 27) are DENIED.

2) Defendant Sandra McArdle's motion for partial summary judgment on exhaustion grounds (dkt. #45) is DENIED.

3) Defendant McArdle's motion to file a reply brief in support of her motion for partial summary judgment (dkt. #52) is GRANTED.

4) Plaintiff's motions for appointment of counsel (dkt. #36, 59) are DENIED without prejudice.

5) Plaintiff's motion to extend deadlines / motion to stop case movement (dkt. #68) is GRANTED IN PART AND DENIED IN PART. RESET DISPOSITIVE MOTION DEADLINE. The court will extend the deadline for plaintiff to respond to defendant Waterman's motion for summary judgment to March 10, 2020, making defendants' reply, if any, due March 24, 2020. In all other respects, the motion is denied.

6) Plaintiff's letter requesting a response to motions (dkt. #71) is DENIED AS MOOT.

7) Defendant McArdle's motion for summary judgment is due on or before March 10, 2020.

Entered this 19th day of February, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge